IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JASON P. BELCHER,

      Movant,

                            Civil Action Nos.  3:12-cv-04717

v.                        (Criminal No: 3:09-cr-00158-3)

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 474).[1] This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED,** and this action be **DISMISSED, with**

---

[1] Also pending are Belcher's subsequently filed Motion to Strike "grounds three and four" in his original petition, (ECF No. 486), and Motion to Supplement his petition with three additional grounds for relief. (ECF No. 500). The undersigned hereby **GRANTS** Belcher's motions to strike and to supplement the record, and has considered the additional grounds in preparing the findings of fact and recommendations set forth herein.

**prejudice,** and removed from the docket of the Court.

## I.     Procedural History

On June 23, 2009, Movant Jason Belcher ("Belcher") was indicted by a federal grand jury on one count of conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 846, and one count of knowingly and intentionally distributing 5 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1).

On March 1, 2010, a pretrial hearing was held, in which Belcher moved in relevant part (1) to dismiss the indictment or exclude the testimony of three witnesses whose grand jury testimony was irretrievably lost due to court reporter error. (ECF No. 357 at 44-69); and (2) to suppress the fruits of the June 24, 2009 warrant search of his apartment, on the basis that the search warrant lacked probable cause in light of multiple inaccuracies contained in the affidavit for the search warrant. (*Id.* at 69-136). The District Court denied both motions, and the case proceeded to trial. (ECF No. 357).

A four-day jury trial of Belcher and his co-defendant, Kevin L. Robinson, took place from March 16 to March 19, 2010.  (ECF Nos. 352, 355, 387, 388, 389, 390). On March 19, 2010, the jury returned guilty verdicts on both counts against Belcher and acquitted Robinson. (ECF Nos. 390 at 66, 499 at 3). On July 6, 2010, Belcher was sentenced to 216 months imprisonment to run concurrently on both counts, based upon a total offense level of 35 and criminal history category of III.[2] (ECF Nos. 402 at 2; 419 at 49). On July 20, 2010, Belcher appealed his conviction to the United States Court of Appeals for the Fourth Circuit. (ECF No. 410). The Fourth Circuit affirmed Belcher's

---

[2] The District Court granted Belcher a downward variance, which reduced his criminal history category from IV to III. (ECF No. 402 at 2; 419 at 44).

conviction on May 23, 2011, (ECF Nos. 434, 435, 436), and his judgment took effect on June 14, 2011. (ECF No. 437).

On August 27, 2012, Belcher filed the instant petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 474). On December 21, 2012, the United States filed a response, (ECF No. 493), and on January 24, 2013, Belcher filed a memorandum of law in support of his petition. (ECF No. 499).

## II.   <u>Movant's Grounds to Vacate, Set Aside, or Correct His Sentence</u>

Belcher asserts that trial counsel provided ineffective assistance by (1) failing to "vigorously cross-examine [the] court reporter as to the destruction of the compact flash card containing grand jury proceedings," or otherwise obtain dismissal of the indictment; (2) failing to "request an in camera inspection hearing to suppress evidence seized" pursuant to a faulty search warrant affidavit, (3) failing to object or move for a mistrial based upon a case agent's witness-coaching, and (4) misstating evidence during closing arguments; and (5) failing to request jury instructions relating to the destruction of grand jury proceeding records. (ECF No. 500-1 at 2-3). Belcher also alleges that his appellate counsel provided ineffective assistance for "failure to raise a meritorious issue on direct appeal." (*Id.* at 3).

## III.   <u>Standard Under 28 U.S.C. §2255</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence entered in a separate proceeding. *Wall v. Kholi*, 131 S.Ct. 1278, 1284-85, 179 L.Ed.2d. 252 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence

exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion. *United States v. Harrison*, No. 96-7579, 1997 WL 499671, at *1 (4th Cir. Aug. 25, 1997) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

In this case, Belcher attacks his conviction and sentence on the ground that his Sixth Amendment right to the effective assistance of counsel was denied at the trial and appellate stages of the proceedings. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel during critical stages of criminal proceedings, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), including sentencing, *see Glover v. United States,* 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), and direct appeal. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Strickland,* 466 U.S. at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

Under *Strickland*, a defendant can prove ineffective assistance of counsel by meeting the requirements of a two-prong test. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994). First, the defendant must show that counsel's representation fell below an objective standard of

4

reasonableness. When evaluating counsel's performance under the first prong of *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (internal quotations omitted). The second prong of the *Strickland* test requires the defendant to affirmatively establish prejudice; that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Id.* at 693. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Moreover, the Court is "not at liberty to rely on hindsight to reconstruct the circumstances of counsel's conduct." *Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012). Rather, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, "the reasonableness of counsel's

performance is to be evaluated from counsel's perspective at the time of the alleged error." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

## IV.  Discussion

### A. Destruction of Grand Jury Proceeding Records

During the pretrial hearing, Belcher's counsel moved to dismiss the indictment or alternatively to exclude the trial testimony of three witnesses whose grand jury testimonies were irretrievably lost, pursuant to the Jencks Act, 18 U.S.C. § 3500. (ECF No. 357 at 44-69).

Under the Jencks Act, "the government must disclose any statement in its possession made by a government witness that relates to the subject matter of the witness's trial testimony." *United States v. Poulin*, 461 F. App'x 272, 285 (4th Cir. 2012); 18 U.S.C. § 3500(b). The term "statement" includes any "statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." *Id.* § 3500(e)(3). "[T]he Jencks Act vests trial judges with the affirmative duty of administering the Act by deciding whether government documents relating to witness testimony are to be safeguarded or produced." *United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) (internal marks omitted). When the government fails to comply with the requirements of the Jencks Act, the trial court may "strike from the record the testimony of the witness," or declare a mistrial if the interests of justice so require. 18 U.S.C. § 3500(d); *see also United States v. Peters*, 587 F.2d 1267, 1275 (D.C. Cir. 1978) (holding that sanctions under Jencks Act are discretionary).

Several courts have addressed the unfortunate scenario in which the grand jury testimony of a trial witness has been destroyed prior to disclosure to the criminal defendant. In general, defendants seeking sanctions for the loss of grand jury witness statements have been required to demonstrate both bad faith on the part of the Government, and prejudice to the defendant for failure to produce the grand jury testimony. *See United States v. Sommer*, 815 F.2d 15, 16-17 (2d Cir. 1987); *United States v. Budzyna*, 666 F.2d 666, 673 (1st Cir. 1987); *United States v. Lamoureux*, 711 F.2d 745 (6th Cir. 1983) (declining to dismiss the indictment where there had been "no showing of prosecutorial misconduct" related to the misplacement of grand jury records); *Peters*, 587 F.2d at 1275-76; *United States v. Carpenter*, 510 F.2d 738, 740 (D.C. Cir. 1975); *United States v. Perry*, 471 F.2d 1057 (D.C. Cir. 1972); *United States v. Davis*, 402 F.Supp.2d 252, 263 (D.D.C. 2005).

In the instant case, Connie Demuth, the court reporter for Belcher's grand jury proceeding, testified during the pretrial hearing that prior to transcribing the witnesses' testimony, her dog bit the compact flash card that contained the recording of the grand jury proceeding, thereby destroying it. (ECF No. 357 at 53-54). Ms. Demuth testified that while she was downloading another job at her computer, she laid the flash card on her desk and looked away, during which time her dog picked up the flash card with its mouth. (*Id.* at 53). Subsequently, Ms. Demuth's husband found the flash card in the dog's mouth and removed it, but as Ms. Demuth explained, "it had a hole in the middle of the card." (*Id.*). Ms. Demuth recounted the attempts made to recover the data, first by herself; then by Mr. Vaughn, a computer technician for the U.S. Attorney's Office; followed by Second Creek, a local software company located in Barboursville, WV; and

finally by Drive Savers.com, in Novato, California. (*Id.* at 53-55). None of the attempts to retrieve the data were successful, and Ms. Demuth also discovered that the backup recording used for readbacks had failed to record. (*Id.* at 56-57). The District Court denied Belcher's motion to dismiss the indictment or preclude testimony of the three government witnesses because there was "not evidence of bad faith on the part of the government and there has been no showing of prejudice sufficient to warrant the requested sanctions." (ECF No. 291 at 4). In doing so, the District Court noted that "one of the three witnesses who testified that day aren't even going to be called as a witness at trial," the second witness, a woman, was "apparently going to testify only as to Mr. Robinson, not as to Mr. Belcher," and that the defendants had already been provided with the third witness' "reports and other sources of information that would likely describe in considerable detail what his grand jury testimony had been." (ECF No. 357 at 68-69).[3]

Belcher now argues that trial counsel Collias provided ineffective assistance of counsel by failing (1) "to vigorously cross-examine [Ms. Demuth] in relation to the destruction" of the flash card, (2) "to summon [Ms.] Demuth's husband to establish proof as to [her] testimony," (3) "to subpoena the compact flash card," and (4) to "call Mr. Vaughn and other computer personnel who were involved." (ECF No. 499 at 11-13). Belcher insists that "[t]here is a possibility that counsel's denial of vigorous cross-examination administering a vigorous defense in relation to obtaining a dismissal of

---

[3] Belcher identifies two of the three grand jury witnesses as confidential informant Christopher Thornhill and DEA Agent Tom Bevins. (ECF No. 499 at 15). Confidential informant Mr. Thornhill did not testify at trial, and therefore Belcher was not entitled to his grand jury testimony under the Jencks Act. *See* 18 U.S.C. § 3500. Belcher has not identified the female witness, nor is it relevant for the purposes of this action.

indictment was severely prejudicial," (*Id.* at 14), in that it "impugned the possibility of revealing any vindictive acts having occurred before the grand jury that being inclusive with that of witness testimonies (CI Thornhill, SA Bevins), and evidence attested to by same witnesses used in bringing forth the indictment, and that these very testimonies are what indicted [him]." (*Id.* at 15). This argument is meritless.

First, despite the errors Belcher assigns to Mr. Collias's conduct, it is clear that his representation at the pretrial hearing was not objectively unreasonable. Belcher faults Mr. Collias for failing to more actively challenge Ms. Demuth's story, but offers no evidence that her testimony was indeed false. Belcher argues that certain "inconsistencies" in Ms. Demuth's testimony should have been "red flags" for Mr. Collias to more actively challenge Ms. Demuth's story. (*Id.* at 12). However, the only purported inconsistency Belcher actually identifies appears to be based upon a misinterpretation of Ms. Demuth's testimony. Belcher argues that Ms. Demuth gave inconsistent testimony when she stated on direct examination that "Mr. Vaughn took custody of the flash card," but then stated on cross-examination that she "Fed Ex'd them – Second Creek had the card for two or three days." (ECF No. 357 at 61). However, Ms. Demuth's full statement was: "I know that California had – I fed Ex'd them – Second Creek had the card for two or three days. I know California had the card probably a week or so." (*Id.*).  From the context of her testimony, it is evident that Ms. Demuth meant that she sent the flash card to California via Fed Ex, after it had been reviewed locally by Second Creek. This is consistent with Ms. Demuth's testimony that Drivesavers.com's attempt to recover the data "was all at my expense." (*Id.* at 55).

To the contrary, Ms. Demuth provided straightforward testimony as to how the grand jury proceedings were lost under her care, and described separate and unsuccessful attempts to recover the data. (*Id.* at 53-61). Mr. Collias did not err in failing

to require corroboration of Ms. Demuth's testimony, particularly as doing so would not likely have established bad faith or culpability on the part of the United States. Instead, Mr. Collias reasonably attempted to establish that the Government was negligent in failing to implement a back-up system for data failures such as this. (*Id.* at 65).

Second, even if Mr. Collias had more vigorously cross-examined Ms. Demuth or otherwise sought to verify her testimony with corroborating evidence, Belcher has still failed to establish the requisite prejudice to warrant dismissal of the indictment or exclusion of the grand jury witnesses from testifying. As the District Court noted, only one of the three grand jury witnesses, Officer Bevins, was intended to and did testify against Belcher, and the Government had already provided Belcher with Bevins's "reports and other sources of information that would likely describe in considerable detail what his grand jury testimony had been." (*Id.* at 69). Furthermore, Belcher does not address how his suggested changes to Mr. Collias's approach would have affected the District Court's determination given the Court's statements that while "having actual recorded testimony can be a very valuable tool for counsel, in this case [the Court] really [cannot] find at this point that there's any prejudice to the defendants that would rise to the level of justifying either of the sanctions sought, that being dismissal of the charges or preclusion of the witnesses." (ECF No. 357 at 68). Accordingly, under the second prong of *Strickland*, Belcher has failed to establish any discernible prejudice flowing from his counsel's purportedly deficient conduct at the pretrial hearing.

Therefore, the undersigned **FINDS** that trial counsel did not provide ineffective assistance for failing to more vigorously cross examine Ms. Demuth or to seek corroborating evidence of her testimony at the pretrial hearing.

## B.  June 24, 2009 Search Warrant of Belcher's Apartment

Belcher argues that trial counsel was ineffective for failing to request an *in camera* evidentiary *Franks* hearing to suppress evidence found in the course of executing a search warrant at his Proctorville apartment on June 24, 2009.[4] (ECF No. 499 at 17). Belcher contends that the search warrant was issued in violation of the Fourth Amendment because the supporting affidavit "was false, misleading, and obtained after [an] illegal entry." (*Id.*).

In *Franks v. Delaware*, the defendant sought to suppress items seized in the course of a search warrant on the ground that the warrant had been issued based upon an affidavit which contained misstatements that had been made in "bad faith." 438 U.S. 154, 157-58, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). There, the Supreme Court of the United States held that in order to void the search warrant, the defendant must first make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56. The Supreme Court elaborated that:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting

---

[4] At trial, defense counsel presented evidence that Belcher had not resided in the Proctorville apartment since February 2009. (ECF No. 389 at 177, 261). However, during the pretrial motions hearing, the issue of whether Belcher resided at the Proctorville apartment on the date of his arrest did not appear to have been in dispute. (ECF No. 357 at 73, 101, 114-15).

reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted ... is only that of the affiant, not of any nongovernmental informant.

*Id.* at 171-72. After a defendant makes the requisite preliminary showing, the trial court will hold a hearing for the defendant to establish "by a preponderance of the evidence, and with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." *Id.* at 156; *see also United States v. Okun*, 453 F. App'x 364, 371-72 (4th Cir. 2011). If the defendant is successful, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

On June 24, 2009, the day after Belcher was indicted, DEA Agent Tom Bevins arranged to purchase $3,500 worth of crack cocaine from Belcher, with the transaction to occur at a BP gasoline station in Proctorville, OH. (ECF No. 389 at 29-30). Agent Bevins met Belcher at the BP station, and he was subsequently arrested. (*Id.* at 31-32). Shortly after his arrest, law enforcement officers entered Belcher's apartment in Proctorville, OH, apparently with the intention of securing it while awaiting a search warrant. (ECF No. 132-1 at 4; 357 at 78). After entering the apartment, the officers observed a purse, which Belcher's girlfriend, Samatha Rae Horn, identified as hers. (ECF No. 132-1 at 4). Ms. Horn gave permission to search her purse, at which point a quantity of marijuana, crack cocaine, and over $5,000 cash were discovered and seized. (*Id.*).

Later that day, law enforcement authorities obtained a search warrant based upon an affidavit provided by Detective Aaron Bollinger of the Lawrence County, Ohio

Sheriff's Office. (*Id.* at 2-8). The search warrant was executed that same day, (*Id.* at 1), and resulted in the seizure of various quantities of cocaine, crack, and heroin, two firearms, a set of digital scales, wax paper packages, several baggies containing small amounts of marijuana, and over $5,000 cash. (ECF No. 129 at 2; 389 at 98-111). On October 13, 2009, Belcher's trial counsel at the time filed a motion to suppress "all fruits of [the] officers' search of his residence, located in Proctorville, Ohio on June 24, 2009," arguing that "[o]fficials used observations made incident to their initial warrantless entry and search of the premises to obtain a search warrant," (ECF No. 129 at 1), and that the warrant "affidavit recklessly contained false information which was made to appear more timely than it actually was." (ECF No. 132 at 6).[5]

During the pretrial motions hearing, Officer Bollinger testified that (1) although he stated in the affidavit that "[i]n March of 2009, Special Agent Tom Bevins purchased approximately one ounce of crack cocaine from Jason Belcher," (ECF No. 132-1 at 3), Agent Bevins actually purchased 15 grams of crack on February 11, 2009. (ECF No. 357 at 83, 86); and (2) he incorrectly stated that "recorded telephone calls were made to Jason Belcher" during controlled purchases of crack cocaine, (ECF No. 132-1 at 3), when in fact no calls with Belcher had been recorded. (ECF No. 357 at 84). Additionally, Samantha Rae Horn testified that the first time law enforcement officers entered Belcher's apartment, they did so without asking for permission, (*Id.* at 106-09, 111, 115-16), and that although she was Belcher's girlfriend and kept a few outfits at his apartment, she did not live there. (*Id.* at 114-15). This testimony contradicted Officer

---

[5] Lex Coleman, who was originally appointed to represent Belcher, filed both a Motion to Suppress and a Memorandum in Support of Pretrial Motions. (ECF Nos. 129, 132). Prior to the pretrial motions hearing, Mr. Collias replaced Mr. Coleman as Belcher's trial counsel. (ECF Nos. 153, 159).

Bollinger's affidavit and testimony that Ms. Horn had informed the officers that she lived in the apartment with Belcher, and that she had given law enforcement officers permission to enter the apartment and look around to ensure that nobody else was present. (ECF No. 132-1 at 4; 357 at 77). The District Court found that despite the inaccuracies contained in the affidavit and Ms. Horn's testimony, the remainder of the affidavit had "ample information to support the issuance of a warrant," given the uncontested information provided by Megan McDonald and Leoditus Smith, and the additional information provided by Agent Bevins. (ECF No. 357 at 136). Likewise, the District Court noted that "[t]o the extent that there's inaccuracies or that [law enforcement] withheld what might have been the true circumstances around whether Miss Horn was a resident or any of that doesn't rise to the level of justifying a *Franks* hearing." (*Id.*). Accordingly, the District Court denied Belcher's suppression motion on the ground that even without the false or contested information, the remainder of the affidavit provided probable cause to issue the search warrant. (*Id.*).

Although Belcher acknowledges that the District Court addressed his motion to suppress during the pretrial motions hearing, he seems to believe that trial counsel should have requested a separate, *in camera Franks* hearing prior to the pretrial motions hearing, so as to "produce the evidence needed to make a strong threshold showing that *Franks* required." (ECF No. 499 at 19). Belcher argues that "as a result of [Mr.] Collias's failure to promptly request an in camera inspection *Franks* hearing prior to the Motion to Suppress (Pretrial) hearing," he sustained "actual prejudice, as surely the pretrial proceeding was an inappropriate time to challenge the veracity of false averments by Officer Bollinger in the affidavit used in obtaining the search warrant."

14

(*Id.*). This argument is also meritless.

Although the District Court denied Belcher a *Franks* hearing, both he and the Government were able to present witness testimony and argument during the pretrial motions hearing as to the contents of the affidavit. *See Williams*, 526 F. App'x 312, 314 n.3 (4th Cir. 2013) (noting that the District Court "sort of just had a *Franks* hearing because defense counsel called witnesses and the prosecutor called witnesses."). Trial courts regularly conduct pretrial motions hearings in order to determine whether a defendant has satisfied the preliminary requirements to hold a *Franks* hearing. *See United States v. Miller*, 534 F. App'x 204, 207 (4th Cir. 2013); *Williams*, 526 F. App'x at 313-14. Belcher offers no explanation as to why he required an *in camera* hearing to establish the requisite preliminary showing, and fails to identify any documents, testimony, or other evidence that could not have been reviewed by the District Court during the pretrial motions hearing. Thus, Belcher has failed to identify any constitutionally deficient action or conduct of Mr. Collias.

Second, the District Court specifically found that there was "substantial evidence to support the issuance of this warrant" and that "none of [the incorrect] information would have been essential to the determination of probable cause by Judge Capper." (ECF No. 357 at 134, 136). Accordingly, even if Mr. Collias had requested an *in camera* review of the evidence, and successfully demonstrated intent to mislead, he still would not have prevailed on the suppression motion because the warrant was nevertheless supported by probable cause. *See Franks*, 438 U.S. at 171-72 (explaining that "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable

cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing"); *United States v. McKenzie-Gude*, 671 F.3d 452, 462 (4th Cir. 2011) ("Even if the affiants intentionally made the asserted misrepresentation—which the district court found not to be the case—[the defendant] has failed to demonstrate how that alleged misrepresentation was material to the probable cause determination."). Belcher has failed to demonstrate any prejudice resulting from Mr. Collias's conduct.

Therefore, the undersigned **FINDS** that trial counsel did not provide ineffective assistance by not requesting an *in camera* hearing under *Franks* to challenge the search warrant and resulting seizure of items found in Belcher's apartment.

### C. Government Witness Coaching

Belcher next argues that trial counsel provided ineffective assistance for "failing to move for a mistrial, or object to the improper coaching of governments *[sic]* witness Mr. Noah Flora by DEA Agent Wren Ray" at trial. (ECF No. 499-1 at 1).

Government witness Noah Flora testified on the first day of Belcher's trial. (ECF No. 387 at 101-47). Flora testified on direct examination as to how he met Belcher and Defendant Robinson; how he became involved in selling drugs and his role in the distribution conspiracy; the quantities, values, and rates at which he sold various substances; the protective measures he and the other participants took, including the use of a safe and firearms; specific dates and incidences of distribution; and the circumstances surrounding his arrest, conviction, and sentence drug distribution. (*Id.* at 101-25). On cross-examination by Mr. Collias, Flora further testified to the terms and circumstances of his guilty plea, conviction, and sentence for drug distribution; the end

of his professional relationship with Belcher, and his current feelings regarding Belcher; his most recent conversations with the Government; the safe that was used to transport drugs, cash, and firearms; and previous statements he had made to the Government. (*Id.* at 126-37). On cross-examination by Rich Weston, Defendant Robinson's attorney, the following exchange occurred:

> WESTON: Mr. Flora, I believe that you testified in response to Mr. Adams' questions that my client, Mr. Robinson, had given you the .38 revolver that was seized on the day you were arrested.
>
> FLORA: Yes.
>
> WESTON: Is that what you told Mr. Ray on the day you were arrested?
>
> FLORA: No. I told him I had a gun. I didn't tell him where I got it.
>
> WESTON: You didn't tell him that you got it from customers on the street?
>
> FLORA: I was talking about a chrome one I had.
>
> WESTON: I'd mark this as Defendant's Number 2.

(*Id.* at 138). At this point, the Government asked to approach the bench and the following bench conference occurred:

> ADAMS: Judge, it looks to me like he's going to try to impeach him with this report, which is not a verbatim statement from the witness. It's never been adopted by the witness. It is a report from Special Agent Ray. That's improper impeachment.
>
> WESTON: It's a business record.
>
> ADAMS: He can ask him questions about what the statement was, but –
>
> COURT: Overruled. He can't portray this as being a statement, but he can certainly use this. I don't know what he's going to do with it, but he can certainly use it in his cross-examination. It depends on how he uses it.

> Let me also tell you that as this witness was concluding his testimony, Mr. Ray was sitting back there gesturing and shaking his head and saying yes or no. Tell him to stop that.

ADAMS:     Yes, sir, absolutely.

COURT:     All right.

(*Id.* at 138-39). The bench conference concluded and Mr. Weston went on to cross-examine Flora regarding Agent Ray's notes of a prior statement Flora made as to the source of his firearm. (*Id.* at 139-41).

Based upon this exchange, Belcher now argues that Mr. Collias provided ineffective assistance when he "failed to object or move for a mistrial" after the District Court notified counsel of Agent Ray's gestures. (ECF No. 499-1 at 1). Belcher argues that this error "worked to his substantial disadvantage, infecting his entire trial with errors of constitutional dimensions due to the witness coaching which gave SA Ray the incentive to curry favor with AUSA Adams, allowing the jury to reasonably draw higher regards as to Mr. Flora's credibility and conduct." (*Id.* at 3-4).

The Government argues that the bench conference involved only the Government's counsel and Defendant Robinson's counsel, and therefore Mr. Collias's performance "cannot be held to be below an objective standard of reasonableness considering there is no evidence that he was aware of the district court's observation." (ECF No. 493 at 9). Likewise, in his sworn affidavit, Mr. Collias states that he "has no recollection of the events or occurrences described by Mr. Belcher" regarding Mr. Ray's gestures and head shaking. (ECF No. 489 at 2). In contrast, Belcher asserts that Mr. Collias was in fact privy to the bench conference, and alleges that when Belcher asked Mr. Collias what had transpired, Mr. Collias stated that "SA Ray was making faces at the

Jury, and the Judge told him to stop." (ECF No. 501 at 1). Belcher alleges that he then requested that Mr. Collias move for a mistrial, and that Mr. Collias responded that "to request a mistrial would be useless." (*Id.*). The trial transcript states only that a "bench conference on the record with counsel" occurred, but does not indicate if both Mr. Weston and Mr. Collias were present. (ECF No. 387 at 138). The undersigned need not determine whether Mr. Collias was aware of Agent Ray's gestures however, because even assuming that Mr. Collias knew of and was "free to cross-examine both the agent-witness and the alleged object of his coaching efforts," *United States v. Phibbs*, 999 F.2d 1053, 1073 (6th Cir. 1993), Belcher's assertions of prejudice are purely speculative.

First, Belcher's claim that his entire trial was "infected" by Mr. Collias's failure to object to Agent Ray's gestures, is belied by the trial transcript which clearly demonstrates otherwise. Agent Ray was only observed to have gestured during Mr. Weston's cross-examination of Flora regarding the source of his various firearms, whether Defendant Robinson had provided him with a firearm, and relevant notes taken by Agent Ray. (ECF No. 387 at 138). Agent Ray's gestures were plainly ineffective in tainting or swaying the jurors, as they ultimately found Robinson to be not guilty. Moreover, this testimony did not relate to or otherwise inculpate Belcher, except perhaps in a most attenuated fashion. There is no indication that Agent Ray made any gestures during Flora's earlier testimony on direct and cross-examination by Mr. Adams and Mr. Collias, respectively, or that Flora's testimony regarding Belcher was based upon anything other than his own personal belief and knowledge. *See United States v. Whitney*, 787 F.2d 457, 460 (8th Cir. 1986) (declining to find that an eyewitness's testimony was tainted by "some shaking of heads and some looking back and forth,"

which occurred independent of the witness's relevant testimony). Moreover, Flora's testimony regarding Belcher's role in the conspiracy was largely consistent with the testimonies of other Government witnesses, particularly Steve Hester and Britton Fiske, both of whom apparently worked closely and in a comparable capacity with Flora. (ECF No. 388 at 9-102). Accordingly, there is no indication that a motion for mistrial would have been successful, *see United States v. Cepeda*, Nos. 94-5301, 94-5302, 1995 WL 253737, at *4 (4th Cir. 1995) (district court denied motion for mistrial due to audience member's gestures); *United States v. Parodi*, 703 F.2d 768, 773 n.2 (4th Cir. 1983) (finding that the district court adequately remedied claims that a DEA agent had been "surreptitiously 'coaching' the witness with nods or shaking of his head" by requiring the agent "to withdraw from the courtroom at that point"), nor is there any reasonable probability that "but for Collias's unprofessional error of failing to object and move for a mistrial" the jury would have returned a more favorable verdict against Belcher on either count. (ECF No. 499-1 at 4).

Therefore, the undersigned **FINDS** that trial counsel did not provide ineffective assistance for failing to object or move for a mistrial due to Agent Ray's observed gestures during Witness Flora's testimony.

### D. Closing Arguments and Jury Instructions

Belcher argues that Mr. Collias provided ineffective assistance at the close of trial by (1) "misstating evidence during summation," and (2) "fail[ing] to request a jury instruction on the inability of the Government to provide testimonies" of grand jury witness Agent Tom Bevins for impeachment purposes. (ECF No. 499-1 at 5).

1. ***Closing Arguments***

Belcher asserts that during his closing argument, Mr. Collias inaccurately stated that "[t]here's no evidence he'd been at the [Proctorville] apartment that day or the day before" his arrest, (ECF No. 390 at 37; 499-1 at 5), when in fact Belcher had testified that when he arrived at the BP station on the date of his arrest, he had just come from the Proctorville apartment. (ECF No. 389 at 268). In his rebuttal argument, Mr. Adams encouraged the jury to recall Belcher's testimony from the previous day, stating that "Biz got on the stand and he admitted that he came from that apartment when he went to the BP station. What better evidence is there than his client's own admission? He had just left from there the same day that all that product was found at that apartment. There's no evidence he was there? Biz says differently. He said he was there." (ECF No. 390 at 58). Belcher argues that Mr. Collias's misstatement was directly damaging to him because it "allowed AUSA Adams to spotlight in the minds of the jury as to the residence and illegally seized substance therein," which Belcher contends should have been suppressed in the first place. (ECF No. 499-1 at 6).

The undersigned finds that although Mr. Collias erred in stating that no evidence linked Belcher to the apartment on the day of his arrest, Belcher has failed to demonstrate prejudice resulting from this misstatement. *See Washington v. Murray*, 952 F.2d 1472, 1481 (4th Cir. 1991) (rejecting an ineffective assistance claim of inadequate closing argument due to lack of prejudice). First, as discussed above, at the time of trial the District Court had already denied Belcher's motion to suppress the evidence seized from the Proctorville apartment. *See supra* Part V.B. Accordingly, it was not improper for Mr. Collias to address this evidence before the jury. Second, although

Mr. Adams did point out in his rebuttal that Belcher had admitted coming from the apartment to the BP station, (ECF No. 390 at 58), Mr. Collias's misstatement was of limited prejudicial value because Mr. Adams had already "spotlighted" the evidence relating to the Proctorville apartment in his closing argument, and specifically highlighted (1) Samantha Horn's testimony that she was Biz's girlfriend, that a cookie of crack was found in her purse, and that she had connected the crack to Belcher; and (2) the testimony of several DEA agents regarding the drugs, mixers, digital scales, packaging material, and firearms that were discovered in the course of searching Belcher's Proctorville apartment. (*Id.* at 21, 24). In response, Mr. Collias appropriately questioned the veracity of Ms. Horn's testimony linking Belcher to the apartment and drugs; reminded the jury of testimony that Leoditus Smith and his girlfriend Megan McDonald lived in the Proctorville apartment; and highlighted Beth Wood's testimony that Belcher had ceased living in the apartment and moved in with her several months prior to the date of his arrest. (*Id.* at 35-39). The crux of Mr. Collias's full argument regarding the Proctorville apartment was that Belcher did not reside there on the date of his arrest, and therefore the drugs and related items seized that day were not attributable to him. This line of argument was entirely appropriate. Third, the value Belcher places on Mr. Collias's misstatement is simply unwarranted in light of the full scope of his closing argument, which covered far more evidence and issues than those relating to the Proctorville apartment. *See United States v. Brunson*, No. 3:07cr372, 2012 WL 442123, at *5-6 (E.D. Va. Feb. 10, 2012) (relying on the context of defense counsel's closing argument to find that it was not constitutionally deficient). Indeed, the evidence regarding the Proctorville apartment was not crucial to the Government's case

against Belcher, given all of the other testimony and evidence presented over the course of Belcher's four day trial. Accordingly, there is not a reasonable probability that the jury's verdict would have been different but for Mr. Collias's misstatement as to whether Belcher had been to the Proctorville apartment on the date of his arrest.

### 2. *Jury Instructions*

Belcher alleges that Mr. Collias was "grossly ineffective in failing to request a jury instruction from the Court about the destroyed Grand Jury proceedings which contained the elicit testimony of SA Bevins." (ECF No. 499-1 at 7). As discussed above, during the pretrial motions hearing, the District Court denied Belcher's motion to dismiss the indictment or otherwise preclude the testimony of Agent Bevins as sanctions for the Government's accidental destruction of grand jury testimony records. *See supra* Part V.A. In doing so, the District Court advised the parties that:

> The Court would certainly be willing to instruct the jury that the Government was unable to provide transcripts. At least one of the cases that the parties cited the Court has located indicates that an instruction like that is appropriate. So if the defendants, or either of them, want to offer an instruction like that, the Court would be inclined to do that, but I'm not going to dismiss the charges or preclude these witnesses from testifying.

(ECF No. 357 at 69). Neither Mr. Collias nor Mr. Weston requested an instruction regarding the destroyed grand jury testimony, (ECF Nos. 304, 306), and as a result, no such instruction was included in the District Court's charge to the jury. (ECF No. 352). Belcher now argues that Mr. Collias's failure to request a jury instruction regarding Agent Bevins's grand jury testimony was objectively unreasonable "where there was nothing to contradict the testimony before the jury, and was somewhat the theory relied on by the Government at trial." (ECF No. 499-1 at 9-10). Belcher insists that he was

23

prejudiced by Mr. Collias's inaction on the ground that "jury instructions in fact properly shield from prejudices by separating and specifying issues to be resolved with regard to petitioner." (*Id.* at 10-11).

The undersigned finds that Belcher has failed to demonstrate that Mr. Collias acted objectively unreasonably in failing to request a jury instruction on the destroyed grand jury testimony of Agent Belcher. Although the D.C. Circuit has endorsed the use of instructions "that the jury is free to infer that the missing original notes would have been different from the testimony at trial and would have been helpful to defendant," *United States v. Bundy*, 472 F.2d 1266, 1269 (D.C. Cir. 1972) (Leventhal, J., concurring); *see also Peters*, 587 F.2d at 1276; corrective jury instructions are no means automatically required or even regularly contemplated in the event of accidental loss of grand jury records. *See Sommer*, 815 F.2d at 16-17; *United States v. Person*, 478 F.2d 659, 660 (D.C. Cir. 1973) ("There is no realistic basis, beyond extrapolated speculation, for supposing that the availability of the lost minutes would have undercut the prosecution's case."). Here, defense counsel had already been provided with the reports and other sources of information that Agent Bevins likely relied upon in his grand jury testimony, (ECF No. 357 at 69), and Mr. Collias engaged in a lengthy cross-examination of Agent Bevins, in which he challenged the quality of the drug transaction recordings, the use of a dishonest confidential informant, whether Agent Bevins had lied about having a conversation with Hope Burton, and inconsistencies between Agent Bevins' testimony and that of Agent Ray, among other aspects of his testimony. (ECF No. 389 at 49-89). Without addressing whether Mr. Collias's representation conformed to best practices under the circumstances, it is clear that his conduct was not incompetent

under prevailing professional norms. *See Harrington*, 131 S.Ct. at 788.

Therefore, the undersigned **FINDS** that trial counsel did not provide ineffective assistance of counsel at the close of Belcher's trial.

### E.  Issues Raised on Direct Appeal

Belcher asserts that he received ineffective assistance on direct appeal because his appellate counsel, Matthew A. Victor, failed to raise a particular issue in his appeal despite Belcher's explicit request that he do so. (ECF No. 499-1 at 12). Specifically, Belcher argues that he was "depriv[ed] of his right to a full public trial when the [district court] conducted a separated conference room voir dire of fourteen of the thirty-seven prospective jurors that mostly expressed partially *[sic]* for law enforcement agents, and the Government." (ECF No. 499-1 at 12). Belcher alleges that he requested that Mr. Victor raise this issue on direct appeal, and that Mr. Victor's failure to include this claim in his appeal to the Fourth Circuit amounted to ineffective assistance of counsel. (*Id.*).

The standard for ineffective assistance of appellate counsel is generally the same as for trial counsel. *See Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000). In order to show ineffective assistance of appellate counsel, Belcher must satisfy the two-part test under *Strickland. See Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). That is, he must demonstrate that "counsel was objectively unreasonable" in failing to file a merits brief addressing a nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure. . . , he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

25

On review, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." *Bell*, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989) (quoting *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)). Although it is "still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was incompetent for failing to do so will be difficult. *Robbins*, 528 U.S. at 288. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

In *Presley v. Georgia*, the Supreme Court of the United States definitively held that "the Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors." 558 U.S. 209, 213, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010). Thus, "before excluding the public from any stage of a criminal trial," *id.* at 213, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings

adequate to support the closure." *Id.* at 214 (quoting *Waller v. Georgia*, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)); *see also Hays v. Town of Gauley Bridge, W. Va.*, No. 2:09-CV-01272, 2010 WL 1848487, at *3 (S.D.W.V. 2010). Although "violation of the guarantee of a public trial require[s] reversal without any showing or prejudice and even though the values of a public trial may be intangible and unprovable in any case," *Arizona v. Fulminante*, 499 U.S. 279, 294, 111 S.Ct.1246, 113 L.Ed.2d 302 (1991), a defendant's failure to object to the closing of a courtroom constitutes a waiver of the right to public trial. *See Levine v. United States*, 362 U.S. 610, 619, 80 S.Ct. 1038, 1044, 4 L.Ed.2d 989 (1960); *Peretz v. United States*, 501 U.S. 923, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (citing *Levine*, 362 U.S. at 619); *Hutchins v. Garrison*, 724 F.2d 1425, 1432 (4th Cir. 1983); *see also United States v. Acosta-Colon*, -- F.3d ---, 2013 WL 6654386, at *3 (1st Cir. 2013); *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011).

Here, Belcher argues that Mr. Victor provided ineffective assistance of counsel for failing to raise an appeals claim that his Sixth Amendment right to a public trial was violated in the course of voir dire. (ECF No. 499-1 at 12). However, it appears that Belcher effectively waived his right to a public trial at the voir dire stage of his proceedings. During voir dire, the District Court asked the venire a series of preliminary questions, after which he held a brief bench conference "to gauge how much follow-up" the parties believed they had. (ECF No. 355 at 1-45). Subsequently, the District Court announced:

> All right. Ladies and gentlemen, I am going to have some follow-up questions for you, and we're going to conduct this, rather than having to crowd around the bench up here and do it here, I'm going to adjourn to the conference room to do it. What we'll do is I'm going to meet with the lawyers for just a minute or two and we'll start calling individual jurors back. I don't think this is going to take real long.

(ECF No. 355 at 45). Subsequent voir dire questioning of individual jurors was held "in chambers on the record with counsel and the defendants." (ECF No. 355 at 46). Mr. Collias, Mr. Adams, and Mr. Weston all actively participated in interviewing the individual jurors, and the District Court struck several jurors for cause. (*Id.* at 46-130). At the close of questioning, the in chambers conference concluded, counsel then exercised their strikes, and the jurors were duly sworn. (*Id.* at 130-38).

At no point did either Belcher or his counsel object to the District Court's in chambers questioning of the prospective jurors. Accordingly, Belcher waived his Sixth Amendment right to a public trial during the limited period of time during which voir dire questioning was conducted in chambers. In light of Belcher's failure to object to the temporary closing of the court during voir dire, the undersigned **FINDS** that Mr. Victor did not provide ineffective assistance for failing to raise this non-meritorious issue on appeal. *See Edelkind v. United States,* Case No. 05–cr–60067, 2010 WL 2944369, *10 (W.D.La. June 28, 2010), *aff'd.* 456 Fed.Appx. 428 (5th Cir. 2012) (per curiam) (unpublished).

## V.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

1.    Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 474) be **DENIED**; and

2.    This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is

28

hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**:  March 5, 2014.

Cheryl A. Eifert
United States Magistrate Judge